## THE ESROM.

(Circuit Court of Appeals, Second Circuit. January 14, 1920.)

### No. 76.

SHIPPING ☞132(3)—BURDEN ON SHIPPER TO PROVE ALLEGED UNREASONABLE DELAY IN SAILING.

In a suit by a shipper for damages for delay in sailing of the vessel after execution of the bill of lading, the burden of proving that the delay was unreasonable under the circumstances, and for how long, *held* to rest on libelant.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in admiralty by Charles E. Michael and another, copartners as Charles E. Michael & Sons, against the steamship Esrom; Actieselskabet Dampkibet Island, claimant. Decree for libelants and claimant appeals. Reversed.

Burlington, Veeder, Masten & Fearey, of New York City (R. H. Hupper and Goulding K. Wight, both of New York City, of counsel), for appellant.

Bullowa & Bullowa, of New York City (H. L. Cheyney, of New York City, of counsel), for appellees.

Before WARD, HOUGH, and MANTON, Circuit Judges.

WARD, Circuit Judge. July 6, 1915, the libelants made a freight contract with the Interocean Transportation Company for the shipment of 1,957 bales of tobacco from New York to Copenhagen in July; no vessel being named. July 30 the Transportation Company chartered the steamer Esrom to be loaded by it for Copenhagen. Article 1 of the charter provided that the Esrom was to load at New York:

"A full and complete cargo of wheat and/or maize and/or other lawful merchandise, and being so loaded shall forthwith proceed as ordered upon signing bills of lading to Gothenburg and Copenhagen."

Article 13 of the charter provided:

"The captain shall sign bills of lading or master's receipts as and when presented, without prejudice or reference to this charter party, and any difference between the amount of freight by the bills of lading and this charter party, to be settled at port of loading before sailing, as customary."

The foregoing provisions regulate the rights of the charterers and owners inter se.

―――――――――――――――――――――――――――――――

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

July 31 the libelants delivered the tobacco to the steamer and paid the Transportation Company the freight in advance against the company's printed form of bill of lading which concludes as follows:

"In witness whereof the master or agent of the steamship hath affirmed to three bills of lading all of this tenor and date, one of which being accomplished, the others to stand void.          Interocean Transportation Co.,

"By ..........

"W. Habel, Master."

All of the above was the printed form, except the words "three" and "W. Habel, Master."

The Interocean Transportation Company did not sign the bill of lading, but the master did. He testified that he signed it as master by virtue of article 13 of the charter party, and that the owners subsequently forbade him to sign any more bills of lading without first getting authority from them.

The bill of lading, making no reference whatever to the charter party, constituted the contract between the libelants and the charterers, for performance of which, after execution by the master and shipment of the tobacco, the steamship also became bound.

September 17 the Transportation Company became bankrupt, without having paid the freight due under the charter party, and thereupon the owners were obliged to discharge some of the cargo at the demand of shippers, to negotiate some freight settlement with other shippers, who wished their shipments to go forward, and who had paid freight to the Transportation Company without getting bills of lading signed by the master, and to complete the loading. These things necessitated delay, and the result was that she did not sail until October 9.

The trial judge held that the steamship was bound for the performance of the bill of lading, and as he directed a decree for the libelants we must infer that he thought she was also bound to sail within a reasonable time and had not done so. But neither he nor the commissioner determined what was a reasonable time under all the circumstances or discussed it in any way. Indeed, the commissioner allowed interest on the value of the tobacco for three months, although the steamship sailed nine weeks after the goods went aboard, at which date the relation between the libelants and the steamship began. The burden of proving that the sailing was unreasonable under the circumstances of the case, and for how long, lay upon the libelants, and they have not sustained it.

The decree is reversed.